# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL WALLACH,<br><br>                Petitioner,<br>  vs.<br><br>ROBERT HERNANDEZ, Warden,<br><br>                Respondent. | CASE NO. 06cv2279-LAB (LSP)<br><br>**ORDER OVERRULING OBJECTIONS TO REPORT AND RECOMMENDATION; AND**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner filed his petition for writ of habeas corpus ("Petition") seeking relief from denial of parole by the Board of Parole Hearings (the "Board"). The Board found him unsuitable for parole and scheduled his next hearing in three years. The Petition was referred to Magistrate Judge Leo S. Papas for report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.3. Judge Papas issued his report and recommendation (the "R&R") concluding the Petition did not support issuance of the writ and recommending denial of the writ. Petitioner filed written objections.

**I.  Legal Standards**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written

objection has been made in accordance with this rule." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court reviews *de novo* those portions of the R&R to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." (en banc).

Petitioner has had his day in state court. In determining whether to issue the writ of habeas corpus, the Court is examining whether the state court's decision and ultimately, the Board's should be set aside for the limited grounds on which the writ is available. The Court's role is not to make its own factual determination regarding the nature of the commitment offense, but to determine whether Plaintiff's claim, which was adjudicated on the merits in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Irons*, 505 F.3d at 852–53.

The R&R pointed this out, citing *Locker v. Andrade*, 538 U.S. 63, 75–76 (2003). (R&R at 5:2–7.)

## II. Discussion

Petitioner objected only to the R&R's recommendation that his denial of parole or the Board's decision to hold a hearing in three years rather than one was based on "some evidence," and concluded that the denial of parole was impermissibly based solely on the bare fact of his commitment offense. (Obj. to R&R, ¶¶ 2–9). Petitioner points specifically to the determination that he posed a low likelihood of becoming involved in a violent offense if he were released into the community. (*Id.* ¶¶ 5–6.)

Petitioner did not object to the R&R's findings of facts, which the Court therefore **ADOPTS**. The following facts are taken from those findings. Petitioner pleaded guilty in

1984 to first degree murder and was sentenced to 25 years to life with the possibility of parole, plus a two-year weapon enhancement. He was awarded 318 days of pre-sentencing term credit and was committed to prison on May 2, 1984.[1]  His indeterminate sentence commenced on December 25, 1984.  He reached his minimum eligible parole date on May 25, 2000.  The details of the crime were as follows:

> Wallach had been in a longstanding dispute with victim Richard Wescott, the president of a printing shop. Wescott held property that belonged to Wallach which he had not returned. The dispute resulted in a civil action. Around that time, someone[2] damaged Wallach's car with a water balloon. Kenneth House witnessed the act but when House refused to reveal who threw the balloon, Wallach shot House in the foot. House ran and Wallach shot him in the back. Wallach then drove to the printing shop and confronted Wescott with a gun. The police were called to the scene and had telephone contact with Wallach. However, contact was lost and Wallach shot Wescott twice in the face, killing him.
> . . .
> [H]e confronted and held Westcott against his will, demanded Westcott return property that was the subject of civil litigation pending between them, and ultimately shot Westcott twice in the face after the property had been delivered to Petitioner's home as demanded.

(R&R at 3:9–13, 10:10–12.) The forensic psychological report includes more details showing Petitioner's calculations and the escalation of violence.  (Pet., Ex. D (Report of Dr. Mura dated June 9, 2004) at 2, 14.)

    Petitioner's record since being incarcerated has been generally good and he has been discipline-free since 1987.  The psychological determination noted a "low likelihood of becoming involved in a violent offense if released into free community," but also indicated that Petitioner appeared to be "grappling with issues of self-awareness and self-understanding."  (R&R at 9:16–18.)  The District Attorney's Office and San Diego Police Department both adamantly opposed Petitioner's release.  (*Id.* at 9:18–24.)

    The Board based its finding of unsuitability for parole on the nature of the commitment offense including his behavior around the time of the crime and the unpredictable nature of

---

[1] Petitioner's objections add the detail that Petitioner is entitled to 80 months of post-conviction credit, which the Court will assume for purposes of this order to be true. (Obj. to R&R at 8 n.2.)

[2] The Board's hearing transcript indicates this was done by children. (Pet., Ex. C (Board Hrg. Tr.) at 11.)

1 the crime, as well as the Board's opinion he needed additional therapy, self-help and
2 programming to cope with stress and to gain insight into his crime. (R&R at 9:13–20.)

3       Plaintiff objects that the Board's conclusions about his need for additional therapy was
4 impermissible speculation in view of the psychological determination of low risk, citing *In re*
5 *Smith*, 114 Cal.App.4th 343, 369 (2003) and *In re Roderick*, 154 Cal.App.4th 242, 272 n.27
6 (2007). Neither of these cases stands for the proposition that a psychologist's ultimate
7 recommendation is binding on the Board, but merely that the Board's subjective speculation
8 did not constitute evidence and did not, by itself, undermine a psychologist's opinion.

9       The recommendations of forensic psychological reports regarding suitability for parole
10 are not, as Petitioner seems to suggest, conclusive. If they were, there would be little need
11 for lengthy, detailed reports; a parole candidate could merely present a psychologist's letter
12 giving the "bottom line" recommendation that he was a low parole risk. Petitioner
13 emphasizes the evaluation's positive points, but the Board may, and did, consider other
14 details. These show some problems and reservations about Petitioner's judgment and the
15 possibility of future violence, and some disagreement between the evaluators, which
16 Petitioner fails to acknowledge fully. Illustrative of what the Board apparently feared are Dr.
17 Mura's observations that Plaintiff "seems to be the poster boy for the passive underdog who
18 explodes when 'one more straw is added to the camel's back' and he 'goes postal." (Pet.,
19 Ex. D at 14.) She also observed:

20       [I]t was not until just before the controlling offense that his defenses and
21       coping skills began to crumble — with the result that he lashed out violently
      in a poorly judged rampage of violence. In fact, in some ways his crime
22       was reminiscent of those committed by postal workers or other disgruntled
      employees who were seen as quiet and passive but suddenly exploded into
23       unbridled violence over a final event which may have seemed trivial to
      others.

24 (*Id.* at 12.)

25       The Board considered Petitioner's unpredictability and the apparent need for further
26 psychotherapy, (Pet., Ex. C at 38, 84), as well as many positive factors, including Dr. Mura's
27 note that recommendations for further therapy that should not be held against him. (*Id.* at
28 40.) Bearing in mind Dr. Mura's observations about the sudden and unforeseen onset of

Petitioner's violent rampage, even bearing in mind the amount of time that has passed since then and Petitioner's good progress, the Board was not unreasonable to be wary.

Even if the Court were to reject the Board's opinion about Petitioner's need to learn to cope with stress and gain insight into his crime, the finding of unsuitability was not solely premised on this. California law directs the Board to consider the facts of commitment offense. 15 Cal. Code Regs § 2402(c). The Board in fact found Petitioner murdered his victim "in a dispassionate and calculated manner and the motive for the crime was inexplicable and trivial in relationship to the offense." (R&R at 11:2–3.)

The Board could permissibly rely on the facts of the commitment offense to find a prisoner is too dangerous to be found suitable for parole, but only if the Board could "'"point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." *Irons v. Carey*, 505 F.3d 846, 852 (9th Cir. 2007) (quoting *In re Dannenberg*, 34 Cal.4th 1061, 1071 (2005)).

In an attempt to show his crime involved only the minimum elements, Petitioner argues that under California law the crime of first degree murder necessarily includes callousness, dispassion, or calculation as elements. (Obj. to R&R, ¶ 7) The crime of first degree murder under California law is defined as the unlawful killing of a human being with malice aforethought, which is perpetrated by "any kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or [certain other crimes]." Cal. Penal Code §§ 187, 189. Cruelty, callousness, and dispassion are thus not elements of the crime. While premeditation is an element of one formulation of the crime, calculation is not.[3]

The Board extensively discussed the details of Petitioner's crime, pointing out the degree of planning and deception required, the many reasons and opportunities he had to

---

[3] The statute explains: "To prove the killing was 'deliberate and premeditated,' it shall not be necessary to prove the defendant maturely and meaningfully reflected upon the gravity of his or her act."

desist, the apparent triviality of his motives for shooting Mr. House and killing Mr. Wescott, and his minimizing of certain aspects of his crimes. (*See, e.g.*, Pet., Ex. C at 11–13, 86-88 (description and general discussion of crimes); 17, 19–20 (discussing Petitioner's inability to recall or analyze, in retrospect, his thinking during the incident); 18, 81–82, 86–87 (disputing Petitioner's description of the killing as resulting from a struggle between himself and the victim); 18–20 (discussing Petitioner's refusal to be dissuaded by the victim's pleading and several attempts to appease Petitioner); 47–49 (discussing transcript of lengthy 9-1-1 call in which dispatcher attempted to persuade Petitioner to desist after Petitioner knew the disputed property had already been returned); 62–65, 81–82 (discussing triviality of water balloon incident); 81, 86–88 (noting Petitioner's failure to acknowledge harm done to Mr. House).)

This is not to say the evidence was entirely or even mostly negative. It is apparent Petitioner has a good deal in his favor, and the Board acknowledged this. Among other things, the Board set his next parole hearing three years out, rather than the maximum of five. (R&R at 13:10–12.) The large amount of favorable evidence does not, however, negate evidence from which the Board could conclude Petitioner presented an ongoing danger. Even if the Board overlooked positive aspects of Petitioner's record, it is not the Court's role to reweigh the evidence. *See Chichil v. Kane*, 255 Fed.Appx. 194, 194 (9th Cir. 2007) (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). Based on the Board's consideration of the facts of Petitioner's crime, however, coupled with some documented reasons for concern about Petitioner's psychological readiness, the Board therefore relied on "some evidence" to reach its conclusions.

Petitioner contends the Board may not continue to rely on his commitment offense to deny him parole. The Ninth Circuit's recent decision in *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. 2008), when issued, offered some support for Petitioner's position. Two facts prevent Petitioner from benefitting from this. First, *Hayward* relied on "extraordinary circumstances," *see Trujillo v. California*, 2008 WL 344107, slip op. at *5 (E.D.Cal. Feb. 6, 2008) (discussing the unusual circumstances of *Hayward*), which are not present here.

Second, the Ninth Circuit has granted rehearing of *Hayward* en banc, 527 F.3d 797, rendering it nonprecedential. While the Ninth Circuit in *Irons* expressed the hope that parole boards would "come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process," 505 F.3d at 854, the Ninth Circuit has not held that clearly established federal law, as established by the Supreme Court of the United States, sets a limit on the number of times parole may be denied on this basis. *See Medway v. Schwarzenegger*, 257 Fed.Appx. 44, 45 (9th Cir. 2007) (citing 28 U.S.C. § 2254(d)(1)).

The Board relied on essentially the same evidence to delay his next parole hearing for three years, so the same analysis supports this decision. Another tribunal besides the Board might have made a different determination, but in light of the record, the Court cannot agree the Board's determinations were unsupported by some evidence.

### III.   Other Remarks

The objections to the R&R close with an expression of dissatisfaction with Magistrate Judge Papas' handling of the R&R, and a rebuke to the Court:

> Although this Court denies these claims as a matter of routine and in this fashion, because the [R&R] ignored the substance of Mr. Wallach's constitutional claims and failed to apply the some evidence standard to review the decision that his parole currently poses an unreasonable public safety risk and that he cannot achieve parole suitability in one year, these issues should be explicitly addressed in the *de novo* review. Said review will be equally unavailing if it fails to articulate a nexus between the two-to-three decades old offense facts or to cite any evidence to override the conclusive forensic determinations of Mr. Wallach's low current parole risk.

(Pet. A at 7:24–8:4). Petitioner was represented by counsel, Attorney Marc Grossman, who signed the objections. Because Mr. Grossman signed the objections, the Court will assume they are his own, and will not attribute them to Plaintiff. *See* Fed. R. Civ. P. 11.

These remarks are inaccurate as concerns the R&R, which went into great detail to discuss Petitioner's Constitutional claims. Though Petitioner urged him to apply the "preponderance" or "substantial evidence" standard (Pet. at 25:13–30:12), the R&R expressly did apply the "some evidence" standard, discussing its application at length. (R&R at 7:22–13:14 (holding "some evidence" was correct standard, and applying it to Petitioner's

due process claims).) To the extent Petitioner's counsel believed the R&R failed to analyze them <u>accurately</u>, he could have objected (and did). But it is simply wrong to say the R&R ignored Petitioner's claims altogether when this is patently not so.

As discussed above, the "some evidence" standard requires the Court to examine whether the Board's decision was supported by some evidence, which the Court has done. It is not appropriate to insist that the Court conduct its own analysis of the evidence and articulate its own reasoning for finding Petitioner parole, or that the Court's review of those portions of the R&R to which he has objected is somehow improper if the Court declines to adopt this approach.

But more than that, it is out of order — and unprofessional conduct — for Mr. Grossman to suggest, with no basis, that the Court unthinkingly denies petitions for writs of habeas corpus as if by force of habit. Judges and courts are of course fallible. But if Mr. Grossman believes this or any other court has erroneously denied any petition, his remedy is to appeal, not to make insulting asides in his briefing.

The Court recognizes it is counsel's duty to represent his client zealously, and it is likely a source of frustration to him that most habeas petitions are denied.[4] That said, intemperate and baseless accusations against the Court do not serve the interest of Mr. Grossman's clients or any other proper purpose and Mr. Grossman is admonished to desist, and warned that any repetition of such conduct in future filings before this Court will result in the imposition of sanctions and referral to the Standing Committee on Discipline. *See* Civil Local Rule 83.5(a), (c).

/ / /
/ / /
/ / /
/ / /
/ / /

---

[4] *See* Roger A. Hanson & Henry W. K. Daley, U.S. Dep't of Justice, *Federal Habeas Corpus Review: Challenging State Court Criminal Convictions* 17 (1995) (98% of issues raised in federal habeas petitions are dismissed or denied).

**IV.    Conclusion and Order**

For the reasons set forth above, Petitioner's objections are **OVERRULED**. The Court **ADOPTS** the R&R.  The Petition is **DENIED**.

**IT IS SO ORDERED**.

DATED: August 29, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge