# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL WALLACH,<br><br>            Plaintiff,<br>   vs.<br><br>ROBERT HERNANDEZ, Warden,<br><br>            Defendant. | CASE NO. 06cv2279-LAB (LSP)<br><br>**ORDER DENYING APPLICATION FOR CERTIFICATE OF APPEALABILITY** |

On September 7, 2005, Petitioner was found unsuitable for parole by California's Board of Parole Hearings, which set the next parole hearing for 2008. On October 10, 2006, after exhausting state court remedies, Petitioner filed his habeas petition in this Court. After full briefing, the Court denied the petition on August 29, 2008. On November 3, 2008, the Court declined to grant a certificate of appealability because, under *Hayward v. Marshall*, 512 F.3d 536, 541 n.6 (9th Cir. 2008), no such certificate was needed.

On April 22, 2010, the Ninth Circuit, sitting en banc, reversed its earlier holding and determined a certificate of appealability was required. *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010). The appellate panel then remanded the case to this Court with instructions to either grant or deny the certificate.

Under AEDPA, the Court can only issue such a certificate "if the applicant has made a substantial showing of the denial of a constitutional right," and the certificate must "indicate which specific issue or issues satisfy the [required] showing." *Smith v. Mahoney*, 596 F.3d

1133, 1148 (quoting 28 U.S.C. § 2253(c)(2) and (3)).  The certificate may issue only if Petitioner shows that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quotation marks omitted).

The Court therefore ordered Petitioner, who is represented by counsel, to submit a formal application for a certificate of appealability, identifying the issues he wished to appeal. Because the Court is under a continuing obligation to examine its own jurisdiction, the Court also required Petitioner to address the possibility that his appeal has become moot as a result of the Board's later decisions.  Petitioner filed a request, which he amended on July 12.  Respondent's counsel has notified the Court that it will file no response.

The Court has reviewed Petitioner's briefing on the issue of mootness and concludes Petitioner has made an adequate showing the appeal is not moot.  The Court infers from Petitioner's briefing, and from Respondent's decision not to respond, that parole was not granted at the 2008 hearing but that Petitioner's record has not otherwise changed substantially.  The Court therefore turns to the merits.

The Court's order of August 29, 2008 adopted Magistrate Judge Leo Papas' report and recommendation (the "R&R").  Together, this order and the R&R address most of the factual and legal issues, so the Court repeats them only briefly here.

In 1984, Petitioner pleaded guilty to first degree murder and was sentenced to a term of 25 years to life, with the possibility of parole.  He reached his minimum parole date on May 25, 2000.  Wallach had had a long standing dispute with the murder victim, Richard Wescott, the president of a printing shop.  Wescott held some property, worth about $1400, that Wallach thought belonged to him, and the dispute had resulted in civil litigation. Around that time, some children threw a water balloon at Wallach's car, causing a piece of plastic near the windshield to pop out.  A bystander, Kenneth House, saw it happen, but when House refused to reveal who threw the balloon, Wallach shot House in the foot. House fled, and Wallach shot him in the back.  Wallach then drove to the printing shop, confronted

Wescott with a gun, and held him against his will. The police were called to the scene and had telephone contact with Wallach. The disputed property was returned to Wallach, but Wallach nevertheless shot Wescott twice in the face, killing him. (R&R at 3:9–13, 10:10–12.)

The Court first notes that the application for the certificate of appealability misreads the record as uniformly favorable. While the evidence the Board considered was mostly favorable to Petitioner, some of it — including the evidence the Board mentioned and relied on — was not. The Board also explained how the evidence supported its finding that Petitioner was not yet suitable for parole.

The sole appealable issue Petitioner identifies is

> the validity of this Court's denial of the Petition by finding some evidence in the record to support the Board's finding of the gravity of the commitment offense, without finding that the Board articulated any rational nexus by which the offense facts it recited elevate Mr. Wallach's forensically determined "*low*" <u>current</u> parole risk to "an *unreasonable risk* of danger" to public safety, the standard below which parole "shall" be granted.

(Am. Application for COA, 2:10–16.) Petitioner cites several authorities in support of these contentions, including two decided after the Court denied the petition, *In re Lawrence*, 44 Cal.4th 1181 (2008) and the Ninth Circuit's en banc decision in *Hayward*. He also cites 15 Cal. Code Regs §§ 2401, 2402(a) and Cal. Penal Code § 3041. Petitioner also appears to be emphasizing "shall" to demonstrate that this case fits within the holding of *Board of Pardons v. Allen*, 482 U.S. 369, 370–71, 381 (1987), and *Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 12 (1979) (holding that, under certain conditions, prisoners may have a liberty interest in parole that is protected under the Due Process clause). Under *Hayward*, California law requires a denial of parole to be based on "some evidence," 603 F.3d at 562, though neither federal law nor the U.S. Constitution imposes such a requirement. *Id*. at 563.

Petitioner's statement of the issue on appeal misreads the law. Section 2402(a) specifically addresses one possible situation when the panel has no discretion to grant parole:

/ / /

> The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

In other words, this section specifies one instance when parole must be denied, not when it "shall" be granted. Sections 2402(b)–(d) address what information the panel is to consider when determining suitability or unsuitability for parole, much of which is relevant here. Sections 2401 and 2402 make clear the decision involves weighing a variety of factors and reaching a decision based on the particular facts of the case. These sections rely on determinations of whether a prisoner is "suitable" or "not suitable" for parole, rather than a finding of "low" or "unreasonable" risk.[1]

*Lawrence* clarifies that the Board's inquiry is to be focused on the prisoner's "current dangerousness," 44 Cal.4th at 1210–11, and cannot be based solely on the egregious nature of the commitment offense unless the Board's reasoning shows a "rational nexus between those egregious circumstances and the conclusion that the prisoner remains a threat to public safety." *Id*. at 1212. There is, however, no requirement that the Board "articulate" the nexus in any particular manner. The requirement that parole "shall" be granted depends on the statutory factors, as explained in *Lawrence* and earlier precedents, and not on the manner in which the Board articulates them.

Drawing on earlier precedent, *Lawrence* held that, in making a decision to deny parole, a parole board's decision must be based on "some evidence." No authority requires

---

[1] "Low risk" and "unreasonable risk" are the "bottom line" findings of detailed psychological evaluations such as were presented to the Board. Neither standard is incorporated into any authority Petitioner has cited, and there is no authority for the proposition that a prisoner found to be psychologically a "low risk" is necessarily suitable for parole. As the Court noted in its order denying the petition, psychologists' "bottom line" evaluations are not conclusive, and parole boards are not required to grant parole to every prisoner psychologists conclude is a "low risk." If they were, there would be no need to instruct parole boards in the factors they should consider, as in 15 Cal. Code Regs. §§ 2401–02. *See In re Rosenkrantz*, 29 Cal.4th 616, 654 (2002) ("[P]arole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation.") *See also Hayward*, 603 F.3d at 563–64 (observing that the Constitution does not require states to rely on prison administrators, psychologists, or counselors when making parole decisions).

the Board to articulate its reasons for denial of parole formally and analytically, and such an articulation may be impossible in many cases. *Hayward*, 603 F.3d at 560 (quoting *Greenholtz*). There is therefore no requirement that the Board point out the particulars of the rational nexus between the evidence and the its finding that Petitioner was not ready for parole; it was enough that the Board pointed out the evidence it found relevant, and stated its conclusions. Both the R&R and the Court's order adopting it point out the Board's statements explaining the evidence and factors it was relying on.

Nevertheless, the Board did identify some specific bases for its decision, beyond the mere fact of the commitment offense, and the state courts considering Petitioner's state habeas petition noted them. The Board weighed both positive and negative factors, but concluded that Petitioner was unsuitable for parole and presented an unreasonable risk of danger to society or threat to public safety if released. (*See* Pet. at 148–155 and 157–58 (Transcript of Parole Board Hearing ("Tr."), pages 81–88 and 90–91).)

At the parole hearing, the Board took note of the cruel, calculated, and dispassionate manner in which the offense was carried out (Tr. at 81, 86, 87); the fact that multiple victims were involved (*id.* at 81, 87, 91); and the rather trivial motives for the shootings. (*Id.* at 81–82, 86, 87). The Board also noted and relied on two exculpatory explanations Wallach had made to them, which they found incredible: Wallach's contention that he actually shot Wescott in self-defense or by accident (*id.* at 82, 86–87; *compare id.* at 18 ("I should have known that if I took a loaded gun there that I would likely run into some situation where I would use it, and the struggle was that something, and during the struggle, I shot and killed him."), and his contention that he intended to give himself up to police, which was contradicted by the recording of the telephone call. (*Id.* at 83; *compare id.* at 19 (". . . I contacted the police in order to resolve it in a peaceful manner. I was trying to get in touch with the police again. I called the 911 operator in order to contact the police to resolve the matter."). The Board also noted Wallach's failure to comment on his shooting of House. (*Id.* at 81, 87).

/ / /

The Board cited observations taken from psychologists' reports that Wallach was still grappling with issues of self-understanding and insight into the crime (*id.* at 84, 91; *compare id.* at 35–40, summarizing and quoting from supplemental report of Dr. Elaine Mura)), and made its own observations that Wallach did not seem to grasp the magnitude of his crime. (*Id.* at 84). The Board also considered the positions of the district attorney's office and the San Diego police department, both of which adamantly opposed Wallach's release based on the nature of his offense, his behavior around that time, and the victim impact statement.[2] (*Id.* at 83; *compare id.* at 46–49, 67–71). The Board specifically mentioned all of these, and found the positive factors did not outweigh the negative. (*Id.* at 85.)

Finally, the en banc holding in *Hayward* did not transform *Lawrence*'s requirements under state law into federal claims. Rather, the en banc panel, applying the avoidance doctrine, first looked to see whether the petitioner had a claim under state law. Because the panel found the parole board's decision found none, there could be no liberty interest created by state law and the inquiry ended there. *See* 603 F.3d at 563. For purposes of this appeal, neither *Lawrence* nor *Hayward* changes the legal issues or the standards for granting habeas relief.

The Board relied on and cited some evidence in support of its conclusion that Petitioner was not suitable for parole, and because there is a logical nexus between that evidence and a finding that public safety required further incarceration. Furthermore, the factors the Board relied on were substantial, and there is an obvious logical nexus between that evidence and a threat of future dangerousness. The fact that Petitioner also had substantial evidence in his favor did not require the Board, under California law, to grant parole. Because Petitioner was not deprived of a state-created liberty interest, and because there is no federal right at stake, the Court finds reasonable jurists would not find it debatable whether the Petition should be granted. *Slack*, 529 U.S. at 483–84 (2000).

/ / /

---

[2] The Board is directed by Cal. Penal Code § 3043 to consider the statements of victims when making parole determinations.

The request for a certificate of appealability is therefore **DENIED**.

**IT IS SO ORDERED**.

DATED: July 20, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge